### DOWLING v. UNITED STATES. *
### No. 6066.

Circuit Court of Appeals, Fifth Circuit.
May 19, 1931.

*Rehearing denied July 7, 1931.

Ion L. Farris and M. H. Myerson, both of Jacksonville, Fla. (R. E. Stillman, of Jacksonville, Fla., on the brief), for appellant.

W. P. Hughes, U. S. Atty., of Jacksonville, Fla.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

From a sentence of fine and penitentiary imprisonment for violation of the Volstead Act (27 USCA), W. H. Dowling appeals. He has moved in this court for leave to present in the trial court an extraordinary motion for a new trial, based on evidence newly discovered since the appeal, and on a contention that his leading counsel was insane at the time of trial. We have examined the affidavits accompanying the motion. There is nothing to support the contention of counsel's insanity at the time of the trial except the fact that some months later he committed suicide. Two other counsel actively assisted in the trial. Neither the record before us, nor the brief signed by him alone, contains anything to suggest mental aberration in the leading counsel. The newly discovered evidence consists mainly of photographs and a surveyor's plat which are claimed more reliably to show the surroundings of the distillery. This evidence cannot be called newly discovered. It differs but little from the evidence in the record, and would not likely have produced a different result had it been before the

jury. Leave to make the motion in the trial court is refused.

The indictment, besides counts charging the appellant alone with manufacturing intoxicating liquor and with being in possession of intoxicating liquors and a distilling apparatus designed for making such liquor on October 25, 1929, upon which he was convicted, contained also counts charging him and one Mott with like offenses on January 7, 1930, upon which he and Mott were acquitted. No objection for misjoinder of offenders and offenses was taken until after the verdict, when appellant moved in arrest of judgment on that ground. Assuming that there was a misjoinder, and passing by the question whether the misjoinder was cured by the acquittal on those counts in which Mott was concerned, as held in Weinhandler v. U. S. (C. C. A.) 20 F.(2d) 359, and Morris v. U. S. (C. C. A.) 12 F.(2d) 727, we yet think the motion in arrest of judgment was rightly overruled. Misjoinder does not render an indictment incapable of supporting a verdict. If the defendant is embarrassed by such a fault in the indictment against him, he should in advance of trial move to quash it, or for a severance, or to compel the prosecutor to elect on which counts he shall be put to trial. He cannot take the chance of acquittal on a trial and object to the misjoinder only after conviction. Logan v. U. S., 144 U. S. 263, 297, 12 S. Ct. 617, 36 L. Ed. 429; Goldberg v. U. S. (C. C. A.) 280 F. 89; Phillips v. U. S. (C. C. A.) 264 F. 657.

The assignments of error relating to the instructions given the jury cannot be considered, because no exception was taken at the trial. An exception calling the judge's attention to the claimed error in his charge, and affording him opportunity to correct it before the jury retires from the bar, is indispensable to a review in the federal appellate courts. Lindsay v. Burgess, 156 U. S. 208, 15 S. Ct. 355, 39 L. Ed. 399; Sou. Trans. Co. v. Ashford, 48 F.(2d) 191, decided by this court March 31, 1931. In view, however, of the contention made as to the leading counsel's mental aberration, we have examined the instructions complained of, and find that they all relate to the charges upon which there was an acquittal except one, and we have found no reversible error in it.

At the conclusion of the whole evidence a peremptory instruction to acquit was moved, and the motion denied. The evidence was wholly circumstantial, but was sufficient to carry the case to the jury. It tended to show that appellant owned a small farm in the fork between Trout river and a tributary creek, where he had chickens and live stock and a pecan orchard. On October 25, 1929, the dwelling on this land was occupied by one Lane, who had come there two months previously. Another dwelling on an adjoining lot separated only by a wire fence belonged to appellant's wife, and he generally spent the week-ends there accompanied by her. His home was in another county, where he had recently been sheriff. On the date in question the place was raided, and an eight hundred gallon still was found yet hot just outside the farm fence but on appellant's land next to the creek about four hundred yards across the open field from the residences but in a skirt of trees that hid it from view. An artesian water-system watered the chicken yards and garden near the residences, and a smaller pipe line had been extended some 270 yards to the still, which was thus supplied with water. A well-traveled road led from the rear of the two dwellings across appellant's land to the still, and no further. The still appeared to have been operated for two or three months. Some 4,000 gallons of beer and 75 gallons of whisky were found at the still; 30 gallons more of whisky in a smokehouse at the dwelling; over a ton and a half of sugar, and 1,400 pounds of grain and 125 gallons more of whisky were in some of the chicken houses. Below the still at the mouth of the creek was a sign reading: "Posted. No trespassing. W. H. Dowling, owner." Nobody was found at the still, but appellant was on the dock in front of the dwellings. Appellant testified that he did not know anything about the still, had come down that day to fish, had put up the trespass sign in good faith to protect his oysters and not the still up the creek, that he had had the pipe line run to water six or eight hogs he kept over by the creek, and that he had rented the place to Lane about September 1st by the month at $75 per month. There was no testimony that any rent was ever paid. This evidence clearly indicated that the dwelling and outhouses were headquarters for the distillery operation. The jury might well have considered the renting of a farm by the month to be a subterfuge, and the running of a long and expensive pipe line to water a few hogs to be unlikely. That the still should have been operated the very day that the appellant was present was consistent

with his abetting it, but not likely to happen if he was not. The amount invested in the outfit .and supplies, and the strategic position of the trespass sign were facts to be weighed. The credit to be given the appellant's denial of complicity was for the jury. There was no error in submitting the case to their decision.

Affirmed.