## BROOKING v. LEMON.
### No. 1309.

Municipal Court of Appeals for the District of Columbia.

Argued April 13, 1953.

Decided May 21, 1953.

Thomas A. Church, Washington, D. C., with whom Thurman L. Dodson, Washington, D. C., was on the brief, for appellant.

Milton Cohn, Washington, D. C., with whom Denis K. Lane, Washington, D. C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

The question is whether there was sufficient evidence to justify submission to the jury, in a suit claiming damages for the malicious prosecution of two landlord-tenant actions.

Plaintiff in this suit had for many years been in possession of two rooms in a rooming house. Defendant took over the lease of the premises and management of the building, including a poolroom therein. Plaintiff· had worked in the poolroom and defendant continued him in this employment, paying him partly in cash and partly by credit on room rent.

After several years landlord served on the tenant a notice to quit and followed this with a suit demanding possession based on the claim that he required the rooms for his own use and occupation as a dwelling.[1] After the case was partially tried landlord submitted to a nonsuit. Fourteen months later a new notice to quit was served on the tenant, based on the ground that the District Government had ordered him to reduce the number of occupants in the building "before his tenement license can be renewed." After the expiration of the notice landlord filed a second suit demanding possession on the grounds just mentioned in the notice to quit. After a trial the court ordered finding and judgment for defendant-tenant.

Tenant then brought the present action against the landlord, charging that the two landlord-tenant suits had been brought maliciously, without just cause, and in bad faith. He claimed damages for the expense of defending the two suits and for "mental anguish during the dependency of both of these suits due to the threatened loss of his home in crowded Washington, D. ·C." At the close of the evidence defendant-landlord moved for an instructed verdict and this was denied. The jury awarded plaintiff $250 compensatory and $500 punitive damages. Defendant's motion to set aside the verdict was overruled and this appeal followed.

It being settled in this jurisdiction "that one who twice sues another maliciously and without probable cause is responsible to him in damages," Soffos v. Eaton, 80 U.S.App.D.C. 306, 152 F.2d 682, 683, we proceed to examine the three basic contentions on which the appeal must turn.

1. We do not agree with appellant that there was a failure to prove actionable damages. In Soffos v. Eaton, supra, it was ruled that the expense of defending suits and the mental anguish caused by threatened loss of a home· are proper elements of damage in this type of case. This test was met by plaintiff. He testified that he had paid counsel fees of $100 in defending the two suits and "that in his diabetic condition he was scary and nervous because he didn't know what to do." This was sufficient to justify a verdict for compensatory damages. The award of punitive damages was not challenged in the trial court, and we have no basis for disturbing it.

2. Appellant says there was no sufficient showing of malice to take the case to the jury. With this we disagree. There was testimony in behalf of tenant-plaintiff as to certain conversations with and statements by the landlord (not necessary to be repeated here) from which the jury could have found express and active malice on the part of the landlord, or from which it could at least have inferred malice. (We do not overlook appellant's disavowal of all malicious intent or the admitted fact that not long before the second suit, while the tenant was in a hospital, appellant loaned him money.) Under all the circumstances the question of malice was clearly one for the jury.

3. Appellant contends that he was entitled to an instructed verdict because probable cause was established as a matter of law. The record does not show that this was presented as a specific ground for the motion for directed verdict; nor was probable cause mentioned in the motion to set aside the jury's verdict. The argument ad-

---

1. This is one of the grounds under which a landlord may regain possession of prop-erty under the D. C. Rent Control Act. Code 1951, Supp. I, § 45–1605(b) (2).

vanced in this court is that by the testimony as to advice of counsel the question of probable cause was taken out of the realm of factual dispute and should have been taken from the jury. Appellant testified that before commencing the first suit he consulted an attorney and "after explaining fully the circumstances to his attorney" the possessory action was filed. His testimony was the same concerning the second suit, as to which he consulted and engaged another attorney. Did this without more entitle him to a directed verdict?

That probable cause is a mixed question of law and fact was held in the early case of Staples v. Johnson, 25 App.D.C. 155, where it was said, "The appellant relies upon the advice of counsel as establishing probable cause. It was a question for the jury to say upon the evidence whether the advice of counsel was sought and acted upon in good faith, and whether there was a full and fair disclosure of the facts." In a somewhat later case the rule was stated thus: "Where the facts tending to show want of probable cause are in dispute, their existence is for the determination of the jury; but their effect when found is a question for the determination of the court." Mark v. Rich, 43 App.D.C. 182, citing Stewart v. Sonneborn, 98 U.S. 187, 194, 25 L.Ed. 116, in which the Supreme Court made this clear pronouncement: "It is, therefore, generally the duty of the court, when evidence has been given to prove or disprove the existence of probable cause, to submit to the jury its credibility, and what facts it proves, with instructions that the facts found amount to proof of probable cause, or that they do not." [2]

Appellant relies on Chapman v. Anderson, 55 App.D.C. 165, 3 F.2d 336. There, in lodging a criminal complaint defendant had made a full and detailed statement to the prosecuting attorney who then told him that plaintiff was guilty of larceny and gave him a slip authorizing the issuance of a warrant. This was brought out in fullest detail in the testimony of defendant and of the prosecuting attorney as well. After conceding the general rule that probable cause is a mixed question of law and fact, the court detailed the special facts of the case, stressed that the conversation between defendant and the prosecuting attorney was "admitted as true," and held that because "upon an agreed statement of facts probable cause is a question of law exclusively for the court" a verdict for defendant should have been directed.

That decision in no way fits this case. Here there were no admitted facts from which probable cause could be said to exist as a matter of law. True, defendant said he consulted counsel to whom he fully explained all the facts; but there was no word of testimony from either of the attorneys who filed the suits as to what advice they gave him. Nor did defendant at any time say what advice he received or that he relied on such advice, or that he reasonably believed that he had a valid right to sue for possession. Perhaps it may be inferred from his testimony that he did so rely and believe; but the contrary may just as reasonably be inferred. Hence the question of probable cause was one for the jury under instructions like those stated above.[3] To hold otherwise, to say that facts such as these require a directed verdict, would permit every defendant in a malicious prosecution suit to swear the plaintiff out of court simply by saying, "I told the facts to my lawyer and the lawyer filed a suit." The law of malicious prosecution affords no such immunity.[4] After all, almost all suits are filed by lawyers and they necessarily get their information from their clients. Unless the evidence as to advice of counsel be "admitted" as in the Chapman case or so clear as to admit of no conflicting inferences, questions like this must go to the jury.

Affirmed.

2. Cited in Wolter v. Safeway Stores, 80 U.S.App.D.C. 357, 153 F.2d 641 and Lee v. Dunbar, D.C.Mun.App., 37 A.2d 178.

3. The judge's charge is not included in the record and the appellant offers no criticism thereof. Hence we may assume that it correctly covered the law of the case.

4. See Seaboard Oil Co. v. Cunningham, 5 Cir., 51 F.2d 321; Bergeron v. Goldman, 5 Cir., 64 F.2d 917. See also Restatement, Torts, secs. 675, 666.